IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| **SAMANTHA BURTON**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**IPREH, LLC d/b/a INNOVATIVE PRODUCTION USA**,<br><br>Defendant. | Case No. 4:23-cv-4132<br><br>Judge<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Samantha Burton ("Plaintiff"), on behalf of herself and all others similarly situated, for her Complaint against Defendant Ipreh, LLC d/b/a Innovative Production USA ("Defendant"), states and alleges as follows:

**INTRODUCTION**

1. This case challenges policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*. and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq*.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of herself and other "similarly situated" persons who may join this case pursuant to §216(b) (the "Opt-Ins").

3. Plaintiff also brings this claim as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the IMWL and IWPCA on behalf of other employees employed by Defendant in the State of Illinois.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in this District and Division and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and Division.

6. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

7. Plaintiff is an adult individual residing in Galesburg, Knox County, Illinois. Plaintiff was employed by Defendant at Defendant's facility in Galesburg, Knox County, Illinois.

8. Within the three years preceding the filing of this Action, Plaintiff was employed by Defendant as a non-exempt employee who was paid on an hourly basis.

9. At all relevant times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e), the IMWA, and the IWPCA.

10. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d), the IMWA and the IWPCA.

11. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

12. At all relevant times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

13. Plaintiff's written Consent to Join this Action is attached hereto as Exhibit A. Additionally, please find the written Consent to Join signed by opt-in plaintiff Sean Riggs, attached as Exhibit B.

## FACTUAL ALLEGATIONS

14. Defendant manufactures, packages, distributes, and sells food products at its facility in Galesburg, Illinois and at other locations in the United States. Defendant is believed to be headquartered in the State of South Dakota.

15. As a manufacturer of food products, Defendant is regulated by the U.S. Food and Drug Administration ("FDA"), and is subject to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 9, *et seq.* (hereinafter "FDCA").

16. In enforcing the FDCA, the FDA promulgates its own Good Manufacturing Practices ("GMPs") for the manufacturing, packing, or holding of human food, set forth in 21 C.F.R. § 110, with which Defendant is required by law to comply.

17. The GMPs have a section dedicated to personnel, which specifically requires that "[a]ll persons working in direct contact with food, food-contact surfaces, and food-packaging materials shall conform to hygienic practices while on duty to the extent necessary to protect against contamination of food." 21 C.F.R. § 110.10(b). These practices include, but are not limited to:

(1) Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.

(2) Maintaining adequate personal cleanliness.

(3) Washing hands thoroughly (and sanitizing if necessary to protect against contamination with undesirable microorganisms) in an adequate hand-washing facility before starting work, after each absence from the work station, and at any other time when the hands may have become soiled or contaminated.

(4)  Removing all unsecured jewelry and other objects that might fall into food, equipment, or containers, and removing hand jewelry that cannot be adequately sanitized during periods in which food is manipulated by hand. If such hand jewelry cannot be removed, it may be covered by material which can be maintained in an intact, clean, and sanitary condition and which effectively protects against the contamination by these objects of the food, food-contact surfaces, or food-packaging materials.

(5)  Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material.

(6)  Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints.

(7)  Storing clothing or other personal belongings in areas other than where food is exposed or where equipment or utensils are washed.

(8)  Confining the following to areas other than where food may be exposed or where equipment or utensils are washed: eating food, chewing gum, drinking beverages, or using tobacco.

(9)  Taking any other necessary precautions to protect against contamination of food, food-contact surfaces, or food-packaging materials with microorganisms or foreign substances including, but not limited to, perspiration, hair, cosmetics, tobacco, chemicals, and medicines applied to the skin.

18. Notably, "[r]esponsibility for assuring compliance by all personnel with all requirements of this part shall be clearly assigned to competent supervisory personnel." 21 C.F.R. § 110.10(d).

19. The FDCA prohibits the adulteration of food, and the introduction or delivery for introduction into interstate commerce of any adulterated food. 21 U.S.C. § 331.

20. Food is considered adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health[.]" 21 U.S.C. § 342(a)(4).

21. Any person who violates 21 U.S.C. § 331 "shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 U.S.C. § 333(a)(1).

22. In determining whether food is adulterated, the FDA applies the criteria and definitions set forth in the GMPs. 21 C.F.R. § 110.5(a).

23. Consequently, if Defendant's employees did not follow the GMPs set forth in 21 C.F.R. § 110.10(b), they could be held criminally liable under 21 U.S.C. § 333(a)(1).

24. Thus, it would be impossible for Plaintiff and the putative class members, who were engaged in the manufacturing, packaging, and handling of food products, to perform their work duties unless they wore sanitary clothing and other protective equipment.

25. Indeed, if Plaintiff and the putative class members did not follow federal law and wear sanitary clothing and other personal protective equipment, it is possible, if not likely, that this would cause the spread of food-borne pathogens to those who consumed Defendant's products.

26. Upon information and belief, Defendant would not want to endanger the public by encouraging or permitting its employees to disregard federal and/or state food-safety laws.

27. Upon information and belief, Defendant would deem it impossible for its employees to perform their job duties unless they were in compliance with federal or state food safety laws, including the laws requiring Defendant's employees to wear sanitary and other protective equipment.

28. As a result, compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is integral and indispensable to the work they are hired to do.

29. Compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

30. Compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is a component of the work they are hired to do.

31. Unless Defendant's employees involved in the manufacturing, packaging, and handling of food comply with the GMPs, they cannot complete their work.

32. Therefore, the donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food.

33. Because the donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food, the time spent donning and doffing is compensable work time within the meaning of the FLSA and IMWL. Moreover, late paid wages owed Plaintiff and putative class members based upon this unpaid donning and doffing time requires Defendant to pay damages and penalties under the IWPCA.

34. The donning of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacturing, packaging, and handling of food is those employees' first principal activity of the day.

35. The doffing of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacturing, packaging, and handling of food is those employees' last principal activity of the day.

36. At times relevant to this action, Plaintiff was employed by Defendant in the last three years in its food manufacturing facility in Galesburg, Illinois. Plaintiff's job duties involved the manufacturing, packaging, and handling of food. Other similarly situated employees are and were employed by Defendant in the manufacturing, packaging, and handling

of food at Defendant's manufacturing facilities in the State of Illinois and other locations in the United States.

37. Because Plaintiff and other similarly situated employees are involved in the manufacturing, packaging, or handling of food, to comply with the GMPs they must wear sanitary clothing and other protective equipment, including, but not limited to, sanitary uniforms (pants and shirts), hair nets, helmets, steel-toed shoes, gloves and safety glasses. Plaintiff and putative class members were all required to change from civilian clothing into the required sanitary clothing and gear at Defendant's facility – in a locker room.

38. Plaintiff and other similarly situated employees who are involved in the manufacturing, packaging, or handling of food cannot complete their work unless they are wearing sanitary clothing and other protective equipment.

39. Compliance with the GMPs by Plaintiff and other similarly situated employees is integral and indispensable to the work they are hired to do.

40. Compliance with the GMPs by Plaintiff and other similarly situated employees is a component of the work they are hired to do.

41. Compliance with the GMPs by Plaintiff and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

42. The donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Plaintiff and other similarly situated employees.

43. The donning and doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is a component of the work they are hired to do.

44. The donning and doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

45. The donning of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is those employees' first principal activity of the day.

46. The doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is those employees' last principal activity of the day.

47. Plaintiff and other similarly situated employees were non-exempt employees under the FLSA and IMWL and were paid an hourly wage.

48. Within the last three years, Defendant required Plaintiff and other similarly situated employees to don sanitary clothing and other protective equipment while at Defendant's facility prior to clocking in at the start of their shift. Plaintiff and other similarly situated employees were not paid for this time. Moreover, Plaintiff and other similarly situated employees were required to walk a long distance from the locker room where they first donned sanitary gear to an employee meeting near the production floor. Plaintiff and other similarly situated employees were not paid for this walking time.

49. At the end of their scheduled shift, Plaintiff and other similarly situated employees were required to clock out before they made the long walk back to the locker room and then had to doff their sanitary clothing and other protective equipment. Plaintiff and other similarly situated employees were not paid for this walking time or this doffing time.

50. Plaintiff and other similarly situated employees were not allowed to take their sanitary clothing and protective equipment home. Rather they were required to change into and out of their sanitary clothing and protective equipment at Defendant's facility.

51. Plaintiff and other similarly situated employees, as full-time employees, regularly worked 40 or more hours in a workweek in the three years preceding the filing of this Action, including donning and doffing time and associated travel.

52. Plaintiff and other similarly situated employees were not paid for all of the time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel.

53. As a result of Plaintiff and other similarly situated employees not being paid for all hours worked, Plaintiff and other similarly situated employees were not paid overtime compensation for all of the hours they worked in excess of forty (40) each workweek. Moreover, in weeks Plaintiff and/or similarly situated employees did not work in excess of forty (40) hours in a work week, Plaintiff and similarly situated employees were not paid wages in full and on time.

54. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA, IMWL and IWPCA.

55. The amount of time Plaintiff and other similarly situated employees spent performing unpaid work was approximately twenty to thirty minutes or more each day. This resulted in approximately 1 hour and 40 minutes to 2 hours and 30 minutes or more of unpaid overtime per class member, per week.

56. To provide specific details, Plaintiff's hourly rate of pay is believed to have been $18.17 per hour, with some potential for payment of a shift differential. Based upon Defendant's illegal wage and overtime practices, Plaintiff would state that, on average, she was not paid overtime wages of at least $45.42 each work week.

57. To provide additional specific details, Plaintiff and all similarly situated employees performed significant unpaid work before being able to clock in and begin a paid work day on Defendant's time clock. Defendant's time clock was near the production floor area that employees had to walk to and use at the beginning and end of the work day. All time spent donning and doffing sanitary gear and all time walking to and walking from the time clock to the locker room was not recorded on Defendant's time clock and was not paid.

## COLLECTIVE ACTION ALLEGATIONS

58. Plaintiff brings this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

59. The class that Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> **All current and former employees of Innovative Productions USA employed at the Galesburg, Illinois facility who were involved in the manufacturing, packaging, or handling of food or food products and who were required to don and doff sanitary clothing and other protective equipment at any time during the three (3) years preceding the date of the filing of this Action to the present and worked more than forty (40) hours in at least one workweek**.

60. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and are acting on behalf of their interests as well as her own in bringing this action.

61. These similarly situated employees are known to Defendant and are readily

identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## ILLINOIS CLASS ACTION ALLEGATIONS BROUGHT UNDER THE ILLINOIS MINIMUM WAGE LAW

62. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all a class of persons employed by Defendant in Illinois within the last three years ("Illinois Class") defined as:

> **All current and former employees of Innovative Productions USA employed at the Galesburg, Illinois facility who were involved in the manufacturing, packaging, or handling of food or food products and who were required to don and doff sanitary clothing and other protective equipment at any time during the three (3) years preceding the date of the filing of this Action to the present and worked more than forty (40) hours in at least one workweek**.

63. The class is so numerous that joinder of all class members is impracticable. Plaintiff is unable to state the exact size of the potential Illinois Class but, upon information and belief, avers that it consists of at least 100 people.

64. There are questions of law or fact common to the Illinois Class including: whether Defendant failed to pay its employees for donning and doffing time, hand washing, and associated travel, and whether that resulted in the underpayment of overtime and regular wages.

65. Plaintiff will adequately protect the interests of the Illinois Class. Her interests are not antagonistic to but, rather, are in unison with, the interests of the Illinois Class members. Plaintiff's counsel has broad experience in handling class action wage-

and-hour litigation and are fully qualified to prosecute the claims of the Illinois Class in this case.

66. The questions of law or fact that are common to the Illinois Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Illinois Class, listed above, are common to the class, and predominate over any questions affecting only individual class members.

67. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Illinois Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Illinois Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## ILLINOIS CLASS ACTION ALLEGATIONS BROUGHT UNDER THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT

68. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all a class of persons employed by Defendant in Illinois within the last ten years ("Illinois Class") (although Plaintiff does not believe Defendant employed individuals in Illinois for the last ten years) defined as:

> **All current and former employees of Innovative Productions USA employed at the Galesburg, Illinois facility who were involved in the manufacturing, packaging, or handling of food or food products and who were required to don and doff sanitary clothing and other protective equipment at any time during the ten (10) years preceding**

**the date of the filing of this Action to the present and worked more than forty (40) hours in at least one workweek and who suffered late paid wages owed by Defendant.**

69. The class is so numerous that joinder of all class members is impracticable. Plaintiff is unable to state the exact size of the potential Illinois Class but, upon information and belief, avers that it consists of at least 100 people.

70. There are questions of law or fact common to the Illinois Class including: whether Defendant failed to pay its employees for donning and doffing time, hand washing, and associated travel, and whether that resulted in the underpayment and subsequent late payment of overtime and regular wages.

71. Plaintiff will adequately protect the interests of the Illinois Class. Her interests are not antagonistic to but, rather, are in unison with, the interests of the Illinois Class members. Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and are fully qualified to prosecute the claims of the Illinois Class in this case.

72. The questions of law or fact that are common to the Illinois Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Illinois Class, listed above, are common to the class, and predominate over any questions affecting only individual class members.

73. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Illinois Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Illinois Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of

pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

74. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

75. Plaintiff and other similarly situated employees were not paid for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel.

76. Plaintiff and other similarly situated employees regularly more than 40 hours per workweek for Defendant.

77. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel, resulted in Defendant's failure to pay Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

78. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

79. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO
### (Illinois Overtime Violations)
## COUNT THREE

80. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

81. Plaintiff and other similarly situated employees were not paid for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel.

82. Plaintiff and other similarly situated employees regularly worked more than 40 hours per workweek for Defendant.

83. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel, resulted in Defendant's failure to pay Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the IMWL, 820 ILCS 105/1 *et seq*.

84. As a result of Defendant's practices, Plaintiff and other similarly situated Illinois Class employees have been damaged in that they have not received wages due to them pursuant to Illinois' wage and hour laws.

**(Illinois Violations of the Illinois Wage Payment and Collection Act)**

85. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

86. Plaintiff and other similarly situated employees were not paid for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated work travel.

87. Defendant violated, and is violating, the IWPCA by failing to pay Plaintiff and similarly situated employee all wages earned for all hours worked at the hourly rates of pay Defendant agreed to pay them for the work they performed.

88. The IWPCA requires Defendant and employers generally to pay employees for all time they worked at the rate agreed to by the parties.

89. Plaintiff and similarly situated employees accepted Defendant's offer of hourly based wages.

90. During the course of employment, Defendant failed to pay Plaintiff and all similarly situated employees for all time they worked at agreed rates of hourly pay because Defendant was not paying for work performed donning and doffing sanitary gear or traveling to the time clock on the production floor.

91. Because of this violation, Defendant must pay Plaintiff and all similarly situated employees damages for all unpaid straight time and all unpaid overtime owed for up to 10 years preceding the date this Complaint is filed, plus pay all treble damages, as well as statutorily-required damages, plus all attorney's fees, costs and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all persons similarly situated, prays that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Certify this case as a class action under Fed. R. Civ. P. 23 as to the Illinois Class;

C. Enter judgment against Defendant and in favor of Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Illinois Class pursuant to the IMWL and IWPCA;

D. Award Plaintiff and the putative class actual damages for unpaid wages;

E. Award liquidated damages to the maximum amount permitted by applicable law (100% under the FLSA and 200% under the IMWL);

F. Award Plaintiff and the Illinois Class statutory damages for overtime wage violations pursuant to the 5% interest penalties for IMWL violations;

G. Award Plaintiff and the Illinois Class all treble damages, statutory damages, attorney's fees, costs and expenses for IWPCA violations;

H. Award Plaintiff and the putative class attorneys' fees, costs, and disbursements; and,

I. Award Plaintiff and the putative class further and additional relief as this Court deems just and proper.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

/s/ Robert P. Kondras Jr.
Robert P. Kondras, Jr. (18038-84)
100 Cherry St.
Terre Haute, IN 47807
Telephone: 812-232-9691
Facsimile: 812-234-2881
Email: kondras@hkmlawfirm.com

Taryn R. Dissett (37622-84)
Hassler Kondras Miller LLP
100 Cherry St.
Terre Haute, IN 47807
Telephone: 812-232-9691
Facsimile: 812-234-2881
Email: tdissett@hkmlawfirm.com

## JURY DEMAND

Plaintiffs demands a trial by jury on all eligible claims and issues.

/s/ Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
*Counsel for Plaintiff*