UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| SAMANTHA BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-04132-SLD-RLH |
| | ) | |
| IPREH, LLC D/B/A INNOVATIVE | ) | |
| PRODUCTION USA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff Samantha Burton's Revised Unopposed Motion for

Preliminary Approval of Class Action Settlement Agreement, ECF No. 24.  In the motion,

Burton seeks (1) provisional certification of a Rule 23 class and a FLSA collective for settlement

purposes only, (2) preliminary approval of an attached Settlement Agreement, Mot. Prelim.

Approval Ex. 1, ECF No. 24-1, (3) appointment of Robert Kondras and Taryn Dissett as class

counsel, (4) approval of a proposed settlement notice, Mot. Prelim. Approval Ex. 4, ECF No. 24-

4, and (5) scheduling of a Rule 23 fairness hearing for final approval of the Settlement

Agreement.  For the reasons that follow, the motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

In 2023, Burton filed a Complaint, ECF No. 1, alleging that Defendant, IPREH, LLC

d/b/a Innovative Production USA ("IPREH") failed to pay her and similarly situated individuals

for compensable time in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–

---

[1] Unless otherwise noted, the following allegations are drawn from Burton's Complaint, ECF No. 1, and Revised
Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Revised Class Action
Settlement Agreement and Release, ECF No. 25.  IPREH continues to deny liability for the allegations contained
herein.  *Id.* at 2.  They are recited solely to provide context for the Court's analysis.

219, the Illinois Minimum Wage Law, 820 ILCS 105/1–15, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1–20.  IPREH manufactures, packages, and distributes food products.  Burton was employed by IPREH at its plant in Galesburg, Illinois.  In accordance with the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–399, IPREH required Burton to wear sanitary clothing and other personal protective equipment while at work.  She was required to don and doff this equipment at the beginning and end, respectively, of each work day.  She had to don and doff the equipment in locker rooms at the IPREH plant; she could not perform these activities elsewhere.  IPREH policy required her to don the equipment before clocking in for the day and clock out before removing it at the end of her shift.  As a consequence, she was not compensated for the required activities of donning and doffing her protective equipment, nor was she compensated for the time spent walking to and from the locker room to do so.  In sum, twenty to thirty minutes of required activities each day went uncompensated.  Much of this time would otherwise have been overtime hours.  Burton brings her claims on her own behalf and on behalf of similarly situated individuals.  She seeks provisional certification as a class action under Rule 23 of the Federal Rules of Civil Procedure and as a collective action under the FLSA.[2]

After conducting partial discovery and informally exchanging other information, the parties agreed to settle.  Burton filed an Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 20, on December 9, 2024.  The Court denied this motion on the grounds that the proposed settlement agreement did not create an opt-in mechanism as is required for collective action claims under the FLSA.  *See generally* May 1, 2025 Order, ECF

---

[2] For ease of reference the Court refers to the Rule 23 class and FLSA collective together as "the class" and its members as "class members."

2

No. 22.  The parties then came to terms on the Settlement Agreement now before the Court.  The

Settlement Agreement defines the class to include:

> those individuals who, at any time during the period between September 22, 2022,
> and September 17, 2023, were employed by IPREH at its facility located in
> Galesburg, Illinois, involved in the manufacturing, packaging, or handling of food
> or food products, and required to don and doff sanitary clothing and other
> protective equipment at any time.

Settlement Agreement 2.

The settlement provides that IPREH would pay out a maximum of $75,000.  *Id.* at 4.

$25,457 of this would be for attorney fees and costs.  *Id.* at 5.  Another $5,000 would be paid to

the settlement administrator.  *Id.*  In recognition of her work on behalf of the class, $5,000 would

be set aside for Burton.  *Id.*  The remaining $39,543 would be distributed to class members in

exchange for releasing their claims against IPREH.  *Id.* at 4.  Forty percent of the payout to class

members would be the "federal share" for release of their FLSA claims, and the remaining sixty

percent will be the "state share," awarded in exchange for release of the Illinois statutory claims.

*Id.* at 8.  The exact payout to each class member would be calculated based on the pay and time

records produced by IPREH.  *Id.*

Under the terms of the settlement and as described in the proposed notice to be sent to

class members, eligible class members may "opt in" to full participation and receive payment for

both the federal and state shares, "exclude" themselves from any participation, including the

state law class action, or "do nothing" and be considered a member only of the Rule 23 class

who receives only the state share.  Proposed Not. at 2–4.  Those who "opt in" will release all

claims that arise from the facts asserted in the lawsuit.  *Id.* at 3.  Those who "do nothing" will

release all claims except those under the FLSA.  *Id.* at 3–4.  Those who "exclude" themselves

will not be bound by any terms of the settlement, including the release of claims.  *Id.* at 3.

3

Burton filed a motion on August 6, 2025, requesting conditional certification of the class for settlement purposes only, preliminary approval of the Settlement Agreement, appointment of Burton's counsel as class counsel, approval of the proposed notice, and scheduling of a post-notice fairness hearing at which the Court could finally approve the Settlement Agreement. Mot. Prelim. Approval 1–2.

## DISCUSSION

### I.    Conditional Class Certification

#### a.    Rule 23 Class

District courts have "broad discretion" under Rule 23 to determine whether to certify a class action. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). In exercising this discretion, however, the Supreme Court has cautioned that a district court should only certify a class action if "after a rigorous analysis," it determines that the requirements of Rule 23 are met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Although the parties seek certification in the context of a settlement agreement, the Court must nevertheless give the requirements of Rule 23 "undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). This is because the "dominant concern" of Rule 23—ensuring "a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives" —persists in the context of a proposed settlement. *Id.* at 621. Consequently, certification is only appropriate after the Court conducts a rigorous analysis that considers any proffered evidence and separately analyzes the elements of the claim. *See Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338–41 (7th Cir. 2023) (vacating class certification because the district court relied too heavily on the pleadings and did not break down the claim into its constitutive parts for analysis).

Courts may only certify a Rule 23 class upon a showing "that the class is indeed identifiable as a class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). If the class is identifiable, then a court considers whether it satisfies each of the four requirements of Rule 23(a). *Id.*; *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009). Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If the putative class meets all four of these requirements it must also satisfy "any one of the conditions of Rule 23(b)." *Oshana*, 472 F.3d at 513. Burton seeks certification pursuant to Rule 23(b)(3), Mot. Prelim. Approval 1, which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). In this case, the putative class satisfies each of these requirements.

### i. Identifiable Class

A class is not identifiable if it is so large in scope that there are no ready means of identifying its members. *See Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 496–97 (7th Cir. 2012) (vacating, because of the impracticability of identifying all qualifying plaintiffs, an order certifying a class including all students eligible for special education who were delayed or denied entry to the program). In this case, membership in the class can be determined with reference to IPREH's pay roll data. The production of this data during discovery has led to the identification of 114 class members. Mem. Supp. Mot. Prelim. Approval 11, ECF No. 25. The class is thus sufficiently identifiable to proceed.

## ii.  Requirements of Rule 23(a)

### 1.  Numerosity

For a class to be certified, Rule 23 first demands that it be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Although there is no magic number for numerosity purposes, joinder is considered impractical when a class numbers at least forty members."  *Walker v. Calusa Invs., LLC*, 244 F.R.D. 502, 506 (S.D. Ind. 2007) (quotation marks omitted) (citing *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1969)).  Burton need not identity of all members of the class, but she "cannot simply rely on conclusory allegations that joinder is impractical or upon speculative allegations as to the size of the class."  *Id.* at 506.  Here, Burton states that "IPREH provided discovery showing that 114 different employees were impacted during the relevant time period by its alleged [donning and doffing] policy."  Mem. Supp. Mot. Prelim. Approval 11.  IPREH nowhere contests this conclusion.  A class of this size satisfies Rule 23(a)'s numerosity requirement.

### 2.  Commonality

Next, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "A common nucleus of operative fact is usually enough to satisfy the commonality requirement."  *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).  As a result, the commonality requirement may be met despite "some factual variation" among class members.  *Id.* at 1017.  However, class certification may be inappropriate even in the presence of many common questions if there are sufficient dissimilarities within the proposed class.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  This is because "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of

the litigation." *Id.* (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)). As a result, in employment-based class actions, "when multiple managers exercise independent discretion, conditions at different stores (or sites) do not present a common question." *Bolden v. Walsh Const. Co.*, 688 F.3d 893, 896 (7th Cir. 2012).

In this case, the commonality requirement is satisfied. Unlike in *Dukes* and *Bolden*, all class members here worked at the same site and their claims stem from an allegedly illegal policy, not an illegal exercise of discretion. This means the manner of the injury, the cause of the injury, and the party bearing responsibility for the injury are common across all class members. In other words, the class members raise common questions with shared answers that could be generated through litigation over the nature and exercise of the donning and doffing policy at IPREH's Galesburg facility.

### 3.  Typicality

Third, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is "closely related" to commonality. *Rosario*, 963 F.2d at 1018. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quotation marks omitted). There may be "some factual variations" so long as the claims "have the same essential characteristics." *Oshana*, 472 F.3d at 514 (quotation marks omitted). "[S]imilarity of legal theory may control even in the face of differences of fact." *De La Fuente*, 713 F.2d at 232.

In this case, all class members "were subject to the same allegedly unlawful practices," *id.*, suffered the same kind of injury, and rely on the same legal theories for recovery. They "were subject to the same payroll practices and used the same time keeping system," Mem. Supp. Mot. Prelim. Approval 13, and IPREH does not contest Burton's assessment that IPREH's most likely defense would be used against every class member, *see id.* Absent are any of the typical hallmarks of lack of typicality—such as the likelihood of "specific factual defenses," *Oshana*, 472 F.3d at 514 (finding representative party not typical because many class members were potentially uninjured by the allegedly illegal conduct), or the existence of several distinct groups that received different treatment, *see, e.g.*, *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993) (concluding claims of the Retired Chicago Police Association were not typical of the claims of a putative class that included other types of city workers because the claims turned on representations made by defendants that may have been different for each group of city workers). The typicality requirement is easily satisfied.

### 4. Adequacy

Finally, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy prong of Rule 23 considers both the ability of representative plaintiffs to protect the interests of the whole class and the competence of the named plaintiff's counsel. *Retired Chi. Police Ass'n*, 7 F.3d at 598. The representative plaintiff must have a live controversy with the defendant to ensure vigorous advocacy, *Arreola*, 546 F.3d at 799, she must not have "antagonistic or conflicting claims" with other class members, *Rosario*, 963 F.2d at 1018, and she "must retain counsel that is competent, experienced, and generally able to vigorously conduct the proposed litigation," *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 446 (S.D. Ind. 2012). Here, Burton has an ongoing financial

interest in the case that is identical in type to that of all other class members. Her attorneys have experience litigating similar employment disputes and have demonstrated commitment to the case. As a result, the adequacy prong is met, and the requirements of Rule 23(a) are satisfied.

### iii.    Requirement of Rule 23(b)

Burton seeks certification under Rule 23(b)(3). Mot. Prelim. Approval 1. Certification under this subsection requires that the court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc.*, 521 U.S. at 623. It is satisfied when the common questions that can be resolved in a single adjudication constitute a "significant aspect of a case." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quotation marks and alterations omitted). A common question is one for which "the same evidence will suffice for each member to make a prima facie showing" of the elements of the underlying cause of action. *Id.* (quotation marks omitted).

Burton seeks class certification under Rule 23 for her two Illinois state law claims. *See* Settlement Agreement 6. The first alleges a violation of 820 ILCS 105/4a, which prohibits employers from employing any employees for more than 40 hours in one workweek unless such employee is compensated for the excess hours at a rate "not less than 1 1/2 times the regular rate at which he is employed." 820 ILCS 105/4a(1). The second state law count alleges a violation of the Illinois Wage Payment and Collection Act, which requires that employers "pay every

employee all wages earned" on at least a semi-monthly basis. 820 ILCS 115/3. Critical

questions of each of these claims include whether donning and doffing protective equipment is

considered a work duty for which an employee would need to be compensated; if so, whether

IPREH compensated its employees for time spent doing that duty; and if so, at what rate and in

what manner. Each of these is a common question. The answers stem from a policy applicable

to all members of the putative class and can be found using the same evidence. Although

common questions do not answer all relevant questions, the common questions undoubtedly

constitute a "significant aspect of [the] case." *Messner*, 669 F.3d at 815 (quotation marks and

alterations omitted). The outstanding individualized questions do not compel a different

conclusion. *See id.* ("It is well established that the presence of individualized questions

regarding damages does not prevent certification under Rule 23(b)(3)." (citing *Dukes*, 564 U.S.

at 362)).

The Court thus finds that common questions predominate over any questions affecting

only individual members.

### 2. Superiority

When determining whether resolution of a dispute as a class action is superior, Rule 23

instructs courts to consider class members' interests in individually litigating their claims,

whether any class members have already begun individual litigation, the desirability of

concentrating litigation in the particular forum, and the manageability of the class action. Fed.

R. Civ. P. 23(b)(3). The rule seeks to limit class actions to those that "would achieve economies

of time, effort, and expense, and promote uniformity of decisions as to persons similarly

situated." *Amchem Prods., Inc.*, 521 U.S. at 615 (quotation marks and alterations omitted). In

this case, the Court is aware of no ongoing individual litigation by other plaintiffs, and any

individual litigation that would be commenced would involve substantial litigation costs to recover potentially minimal damages. Considering the greater efficiency and uniformity of class actions and the absence of prejudice, the Court finds that proceeding as a class action is superior to individual litigation.

### b. FLSA Collective Action

Because Burton seeks simultaneous certification of a class under Rule 23 and a collective pursuant to the FLSA, the FLSA's certification requirements must also be met. The FLSA "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013) (quoting 29 U.S.C. § 216(b)). To maintain this "collective action," *id.*, "plaintiffs must demonstrate that they are 'similarly situated.'" *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001).

The FLSA does not itself detail the necessary procedures for certifying a collective, "[n]or has the Seventh Circuit done so." *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 780 (C.D. Ill. 2015). As a result, courts have "wide discretion to manage collective actions," *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010), leading courts to apply a range of different requirements for establishing that employees are similarly situated, *compare Woods*, 140 F. Supp. 3d at 780–81 (applying a "two-step" approach wherein conditional certification based on a minimal factual showing precedes final certification), *with Benoskie v. Kerry Foods, Inc.*, No. 19-cv-684-pp, 2020 WL 5769488, at *1–2 (E.D. Wis. Sept. 28, 2020) (describing some courts that use a "one-step" process).

The Court elects to follow the majority rule in this district and apply a two-step process. In step one, "conditional certification," a court considers whether potential claimants exist who

11

are similarly situated to the plaintiff.  *Woods*, 140 F. Supp. 3d at 780.  Some courts require a

"modest factual showing" that similarly situated plaintiffs exist, *see, e.g.*, *id.*, while others grant

conditional certification when "substantial allegations" state that "the putative class members

were together the victims of a single decision, policy, or plan."  *Butler v. Am. Cable & Tel., LLC*,

No. 09 CV 5336, 2011 WL 4729789, at *9 (N.D. Ill. Oct. 6, 2011).  This preliminary finding that

plaintiffs are similarly situated allows for the issuance of notice to potential plaintiffs so they can

opt in to the collective action.  *Woods*, 140 F. Supp. 3d at 781.  At step two, the court applies a

"more stringent" analysis to determine whether to finally certify the collective action.  *Id.*

(quotation marks omitted).  Relevant considerations at this stage include "(1) the disparate

factual and employment settings of the individual plaintiffs, (2) the various defenses available to

the defendant which appear to be individual to each plaintiff, and (3) fairness and procedural

considerations."  *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010)

(quotation marks omitted).

    At either step, a group of plaintiffs is "hopelessly heterogenous" if finding liability

requires "significant individual fact-finding."  *Alvarez*, 605 F.3d at 448.  However, minor factual

differences do not mean plaintiffs are not similarly situated.  *See id.* at 449 ("If common

questions predominate, the plaintiffs may be similarly situated even though the recovery of any

given plaintiff may be determined by only a subset of those common questions."); *Burkholder*,

750 F. Supp. 2d at 994 (concluding that differences in specific work assignments or amount of

compensatory time accrued or denied are "*de minimus* [sic] and should not preclude

certification").

    In this case, the parties agree that conditional certification is proper for settlement

purposes.  *See generally* Mot. Prelim. Approval.  Further, the allegations supporting this

collective settlement suggest that the employees had nearly identical "factual and employment settings." *Burkholder*, 750 F. Supp. 2d at 994.  In Burton's memorandum in support of the unopposed motion to certify the collective, she states that discovery revealed 114 plaintiffs with analogous claims.  Mem. Supp. Mot. Prelim. Approval 11.  They worked at the same facilities, were subject to the same donning and doffing policy, and suffered the same manner of injury. Compl. 7–9.  Any minor factual differences, such as the distance travelled from their work station to the locker room for donning and doffing or the amount of uncompensated time accrued, do not defeat the Court's determination that the collective members are similarly situated.  Without deciding whether substantial allegations are enough to support conditional certification in all circumstances, in the context of this case, the Court finds it sufficient. Accordingly, the Court GRANTS the request to conditionally certify the collective for settlement purposes and permits notice to be sent to potential members of the collective.  Final certification, occurring after the opt-in process is complete, is "more stringent."  *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004).  To receive final certification, Burton will have to make a factual showing that each opt-in plaintiff is similarly situated, namely that they worked at the IPREH Galesburg facility and were required to don and doff protective equipment without compensation.  Such a showing can be made through affidavits, discovery documents, or another form of factual showing.

## II.     Preliminary approval of the Settlement Agreement

"Federal courts naturally favor the settlement of class action litigation."  *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985).  However, this general policy does not turn court approval into a rubber stamp. Preliminary approval of a class action settlement requires a determination that the proposed

settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). "[W]hen conducting a fairness determination relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quotation marks omitted). These factors should be applied with a mind to the Seventh Circuit's instructions that district courts "should refrain from resolving the merits of the controversy" when evaluating a settlement agreement. *E.E.O.C.*, 768 F.2d at 889. To avoid doing so, courts generally approve such settlements "unless it is unfair, unreasonable, or inadequate." *Id.* Indicia of unfairness, unreasonableness, or inadequacy include "the allocation of most or all of the settlement benefits to the named plaintiffs[,] . . . the filing of a proposed decree early in the history of a case, before significant discovery has occurred[,] or[ ] an allegation that the attorneys involved have sacrificed their clients' interests to assure themselves of receiving sizable attorneys' fees." *Id.* at 890–91.

The first of the factors—the strength of the plaintiffs' claim balanced against the value of the settlement offer—is the most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). This analysis should begin with a rough quantification of the value of the claims were they to proceed to trial. *Id.* In this case, the settlement is within the range of possible approval. Based on records produced by IPREH, Burton concluded that "the average Class/Collective Member had a claim worth significantly less than $1,000 each." Mem. Supp. Mot. Prelim. Approval 7. Burton's attorney submitted an affidavit estimating that many

14

had claims "of no more than a few hundred dollars, and, potentially, less than $100." Aff. Robert Kondras 7, Mot. Prelim. Approval Ex. 5, ECF No. 24-5. The Settlement Agreement allocates up to $39,543 for class and collective members, exclusive of attorney fees, Settlement Agreement 4, though the exact payout depends on how many people opt out of the class and opt in to the collective. If all 114 identified class members join both the class and collective, the agreement would pay out an average of $346.86 to each member. Courts have regularly upheld settlement agreements where the agreement paid a significantly smaller portion of the potential value of the claims. *See, e.g.*, *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *5 (describing approved class settlements of $2.84 million when some estimates of the claim's value was $250 million to $1 billion, and of $2.3 million when the best possible recovery was $121 million). As a result, the Settlement Agreement here represents a substantial portion of the actual damages at issue.

An evaluation of the second factor reinforces this conclusion. Even in a smaller scale class action like the one at issue here, litigation expenses can balloon if the claim goes to trial. Regardless of whether Burton has high confidence that she would prevail quickly at trial, the inherent risk of proceeding to trial combined with the financial cost of doing so justifies the difference between the potential value of the claims and the payout under the Settlement Agreement.

The remaining factors also weigh in favor of preliminary approval. Robert Kondras, Burton's attorney, has significant experience litigating wage- and employment-based class and collective actions. *See* Aff. Robert Kondras 3–5. Based on his experience, Kondras concludes that the Settlement Agreement is "reasonable and fair." *Id.* at 8. Further, the parties have already engaged in partial discovery, during which time they were able to evaluate the relative

15

strength of their arguments.    *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 350 (N.D. Ill. 2010) (finding that the sixth factor does not weigh against preliminary approval when "counsel have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits" (quotation marks omitted)).    The third and fourth factors cannot be evaluated until notice is sent to class members.

Approval at this stage is only preliminary.    Class members must still be notified of the proposed settlement, at which point they will have the opportunity to be heard at a fairness hearing.    Fed. R. Civ. P. 23(e)(2); *Gautreaux*, 690 F.2d at 621 n.3.    Without finally deciding whether the Settlement Agreement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), the Court GRANTS the request to preliminarily approve the Settlement Agreement and permits notice to be sent to the class.[3]

### III.    Appointment of Class Counsel

Rule 23 requires that a court certifying a class "must appoint class counsel."    Fed. R. Civ. P. 23(g)(1).    When only one applicant seeks appointment, as is the case here, "the court may

---

[3] Preliminary approval is not formally required prior to issuing notice for an FLSA claim, but "[b]efore approving an FLSA settlement, a court must find that the settlement represents a fair and equitable resolution of a *bona fide* dispute under the FLSA."    *Donaldson v. MBR Cent. Ill. Pizza, LLC*, No. 18-cv-3048, 2019 WL 4447969, at *1 (C.D. Ill. Sept. 17, 2019) (quotation marks omitted).    Applying this requirement, "[c]ourts generally approve settlements that are the product of contentious arm's-length negotiations, which were undertaken in good faith by counsel and where serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation."    *Rambo v. Glob. Diversified, Inc.*, No. 4:20-cv-04212-SLD-JEH, 2021 WL 262556, at *1 (C.D. Ill. Jan. 26, 2021) (quotation marks omitted).    This analysis considers several factors, including:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010) (quotation marks omitted).

At this stage, the Court need not conduct a final analysis of whether the settlement is a fair and equitable resolution of the FLSA claim.    However, because the relevant factors closely mirror those under Rule 23, it preliminarily notes that the settlement appears to satisfy the FLSA's requirements.

16

appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." Fed. R.

Civ. P. 23(g)(2). Section (g)(1)(A) requires that the court consider "(i) the work counsel has

done in identifying or investigating potential claims in the action; (ii) counsel's experience in

handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit

to representing the class." The Court may also consider any other relevant matters. Fed. R. Civ.

P. 23(g)(1)(B). Rule (g)(4) requires class counsel to "fairly and adequately represent the

interests of the class." In this case, Kondras has served as counsel for Burton since the inception

of this case. *See* Not. Appearance of Att'y, ECF No. 2. He submitted an affidavit detailing

decades of experience on dozens of relevant cases, including class, collective, and combined

actions. *See* Aff. Robert Kondras 3–5. These include a number of settlements for amounts

substantially larger the Settlement Agreement here. *Id.* Kondras specializes in employment law,

*id.* at 3, the law at issue in this case, and has demonstrated a willingness to expend resources

representing the class across over two years of work on Burton's case. Based on the statements

in Kondras's affidavit and the experience with the case of both himself and his colleague, the

Court finds Kondras and his associate, Taryn Dissett, adequate to serve as class counsel and

accordingly GRANTS the request to appoint them as class counsel.

### IV. Approval of proposed notice

Because the Settlement Agreement seeks resolution of both the Illinois state law claims

under Rule 23 and FLSA claims as a collective action, the proposed notice must sufficiently

notify class and collective members of the nature of both claims and meet the requirements of

both the FLSA and Rule 23. *See Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 978 (7th Cir. 2011)

(noting that notices sent in combined FLSA collective and Rule 23 class actions must contain opt-in and opt-out mechanisms).

In its previous order denying preliminary approval, the Court noted that the proposed settlement notice contained only an opt-out mechanism, not a procedure for opting in, as is required by the FLSA. *See* May 1, 2025 Order 6–7; *see also Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) ("[P]laintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out."). The proposed notice now provides a mechanism for prospective plaintiffs to opt in to the FLSA claims. As a result, it meets the requirements of the FLSA.

For class actions certified under Rule 23(b)(3), class members must receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Settlement Agreement provides for individual service by U.S. First Class Mail to each individual's last known address. Settlement Agreement 9. Because the parties have access to the identity and contact information of all class members, such notice is appropriate.

Rule 23(c)(2)(B) also states:

The notice must clearly and concisely state in plain, easily understood language:
  (i)    the nature of the action;
  (ii)   the definition of the class certified;
  (iii)  the class claims, issues, or defenses;
  (iv)   that a class member may enter an appearance through an attorney if the member so desires;
  (v)    that the court will exclude from the class any member who requests exclusion;
  (vi)   the time and manner for requesting exclusion; and
  (vii)  the binding effect of a class judgment on members under Rule 23(c)(3)."

18

The proposed notice does not include all of these essential elements. It does not state that class members may enter an appearance through an attorney if they desire. It also nowhere clearly defines the class.

Because the notice does not include all statements required by Rule 23(c)(2)(B), the Court DENIES the motion to approve the proposed notice. Before proceeding further, the parties are DIRECTED to file with the Court a new motion for approval that attaches a proposed notice that includes all necessary statements.

## V.    Scheduling of Hearing

The parties also move for the Court to schedule a Rule 23 fairness hearing for final approval of the Settlement Agreement. Mot. Prelim. Approval 2. At this hearing, the Court would consider whether to finally certify the FLSA collective and whether to finally approve the Settlement Agreement under Rule 23 and the FLSA. Because the proposed notice, which would notify class and collective members of the fairness hearing, is insufficient, the Court DENIES this part of the motion. The parties may renew this request when they submit a proposed notice that satisfies the requirements of Rule 23(c)(2)(B).

## CONCLUSION

Accordingly, Plaintiff Samantha Burton's Revised Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 24, is GRANTED in part and DENIED in part. The Court GRANTS conditional certification of the class and collective, preliminary approval of the Settlement Agreement, ECF No. 24-1, and appointment of Robert Kondras and Taryn Dissett as class counsel. The Court DENIES approval of the proposed Notice of Class Action Settlement and Fairness Hearing, ECF No. 24-4, and consequently DENIES the request to

schedule a Rule 23 fairness hearing.  The parties are DIRECTED to submit a proposed notice that

includes all statements required by Rule 23(c)(2)(B), at which point they can renew these requests.

Entered this 22nd day of December, 2025.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE